UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LORI MARIE JOHNSON,            )
                              )
            Plaintiff,         )
                              )
                              )
v.                             )        No. 3:08-CV-222
                              )        (VARLAN/SHIRLEY)
                              )
MICHAEL J. ASTRUE,             )
Commissioner of Social Security, )
                              )
            Defendant.         )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal

Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding

disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in

Support [Docs. 9 and 10] and Defendant's Motion for Summary Judgment and Memorandum in

Support [Docs. 11 and 12].  Plaintiff Lori Johnson seeks judicial review of the decision of the

Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue,

Commissioner of Social Security ("the Commissioner").

On April 18, 2005, the Plaintiff filed an application for disability insurance benefits under

Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423, claiming disability as of September

1, 2004. [Tr. 40].  After her application was denied initially and also denied upon reconsideration,

Plaintiff requested a hearing.  On April 11, 2007, a hearing was held before an ALJ to review

determination of Plaintiff's claim. [Tr. 14].  On June 13, 2007, the ALJ found that Plaintiff was not

disabled. The Appeals Council denied Plaintiff's request for review; thus the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act only through September 30, 2005.

2. The claimant has not engaged in substantial gainful activity since September 1, 2004, the alleged onset date (20 CFR 404.1520(b), and 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following combination of impairments: a history of nocturnal leg cramps with favorable response to medication; chronic obstructive pulmonary disease secondary to a history of cigarette smoking; degenerative disc disease of the lumbar spine with a history of right discectomy and foraminotomy on September 9, 1996; a chronic cervical strain; a history of bladder suspension surger; and bilateral occipitoparietal headaches (20 CFR 404.1520(c) and 416.920(c)). The impairments combine to effect more than a minimal impact on work-related function. Therefore, the claimant has a "severe" impairment.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 50 pounds on an "occasional" basis and 25 pounds on a "frequent" basis. She may stand, walk, and/or sit a total of 6 hours during an 8 hour workday with routine breaks. She may "frequently" climb, balance, stoop, kneel, crouch, and crawl. She is "unlimited" in her ability to perform push-pull motions with either her upper or lower extremities.

6. The claimant is capable of performing past relevant work as a restaurant hostess/manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20

2

CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2004, through the date of this decision (20 C.F.R. 404.1520 (f) and 416.920(f)).

[Tr. 16-20.]

## II.   DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).  "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled

3

without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4

4

(6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y. of Health & Human Serv.,46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.  ANALYSIS

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred by: (A) disregarding the opinion of Joseph Johnson, M.D., ("Dr. Johnson"), the sole examining physician in this case, when determining Plaintiff's residual functional capacity ("RFC"); and (B) failing to adequately explain the demands of Plaintiff's past relevant work, and how Plaintiff could return to that past relevant work given her RFC.  [Doc. 10].  The Commissioner, in response, contends that substantial evidence supports the ALJ's disability determination. [Doc. 12].

### A.  Determination as to Plaintiff's Residual Functional Capacity ("RFC").

Plaintiff contends that the ALJ's assessment of Plaintiff's RFC was not supported by substantial evidence both because the ALJ rejected the only medical opinion of record by an examining physician, and because the ALJ relied instead on the thinly-sourced opinion of Nathaniel Robinson, M.D., ("Dr. Robinson"), a non-examining state expert.  [Doc. 10].

Plaintiff rightly notes that under federal regulation the ALJ must "[g]enerally . . . give more weight to the opinion of a source who has examined [Plaintiff] than to the opinion of a source who has not examined" Plaintiff.  20 C.F.R. § 404.1527(d)(1).  For that reason, "[i]n the hierarchy of opinions, the opinion of a non-examining physician is entitled to the least weight." Grecol v. Halter, 46 F. App'x. 773, 775 (6th Cir. 2002).  However, the ALJ must still consider the opinions of non-examining physicians.  20 C.F.R. § 404.1527(d) ("Regardless of its source we will evaluate every

5

medical opinion we receive."). In fact, under appropriate circumstances, regulations permit the ALJ to give "great, even dispositive, weight to a [non-examining physician's] opinion." Matelski v. Comm'r of Soc. Sec., 149 F.3d 1183, 1998 WL 381361 at *5 (6th Cir. 1998) (Table). As between the opinions of two non-treating physicians, federal regulation instructs the ALJ to determine their relative weight upon considering, in addition to examining relationship, the factors outlined in 20 C.F.R. § 404.1527(d)(3)-(6). 20 C.F.R. § 404.1527(d).[1] The ALJ's ultimate determination with regard to the weight due to medical opinion, or decision to privilege one opinion over another, must be supported by substantial evidence. See Vance v. Comm'r of Soc. Sec., 260 F. App'x. 801, 806 (6th Cir. 2008) (affirming the ALJ's decision to discount the opinions of treating and non-examining physicians and instead credit the opinion of an examining physician as supported by substantial evidence).

1.      **The ALJ's Determination that Dr. Johnson's Opinion Was Not Supported by Any Objective Findings and Therefore Entitled to No Evidentiary Weight Was Not Supported by Substantial Evidence.**

The ALJ determined that Dr. Johnson's opinion was entitled to "no evidentiary weight whatsoever" on the basis that, "[t]here are no objective findings reported by the consultative physician [Dr. Johnson] which in any way support" Plaintiff's allegations of pain and fatigue or what the ALJ described as "the seemingly excessive residual functional capacity limitations indicated by

---

[1]20 C.F.R. § 404.1527(d)(3) describes supportability, the extent to which "a medical source presents relevant evidence to support an opinion," as one factor relevant to the weight an opinion is due, noting that "because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." Under 20 C.F.R. § 404.1527(d)(4), consistency with the record as a whole is an important consideration, as is specialization of the source under 20 C.F.R. § 404.1527(d)(5). 20 C.F.R. § 404.1527(d)(6) renders relevant "other factors" including "the extent to which an acceptable medical source is familiar with the other information in your case record" at the time they rendered an opinion.

6

the consultative physician in his medical source statement." [Tr. 17]. The supportability of an opinion is an important consideration an ALJ must take into account when assessing the weight due to the opinion of a non-treating physician. 20 C.F.R. § 404.1527(d)(3). However, Dr. Johnson's opinion *is* well supported. Supportability, as defined in 20 C.F.R. § 404.1527(d)(3), is the extent to which: "a medical source presents relevant evidence to support an opinion." It is also relevant whether explanations are based on objectively verifiable findings and signs and whether the source has considered the opinions of treating and other examining sources in forming an opinion. Id. In this case, Dr. Johnson formed his opinions only after having conducted a rather thorough musculoskeletal examination of Plaintiff. [Tr. 171-72]. Each of the flex-tests conducted by Dr. Johnson revealed some degree of abnormality,[2] as did his palpation (examination by touch) and visual observation of Plaintiff.[3] Those objective findings formed the basis of Dr. Johnson's ultimate assessment that Plaintiff "should be able to sit for four hours during an eight-hour day, stand or walk for one hour during an eight-hour day, not routinely lift, and occasionally lift up to 10 pounds." [Tr. 172-73]. Dr. Johnson was also familiar with Plaintiff's medical history, and formed an opinion only

---

[2]With regard to Plaintiff's neck, Dr. Johnson noted that she could raise her chin by only 15 degrees (neck extension), and lower it by only 25 degrees (neck flexion), while she could turn her head by 70 degrees to the left but only 55 degrees to the right. [Tr. 171]. Upon examining Plaintiff's arms and shoulders, Dr. Johnson noted that while her strength, her internal rotation, and her external rotation were all normal, she had only 150 degrees abduction, and only 130 degrees forward abduction, at her right shoulder. [Tr. 171]. With regard to his examination of Plaintiff's back, Dr. Johnson noted that "Range of motion of the back 51 degrees flexion, 10 degrees rightward flexion, 8 degrees leftward flexion, and 5 degrees extension." [Tr. 172]. Dr. Johnson also noted that Plaintiff's left hip flexion is "limited by back pain[,]" and that her straight leg raise was positive for injury on the right at 50 degrees. [Tr. 172].

[3] Dr. Johnson noted that Plaintiff's right Sacroiliac joint was tender to the touch, that and that her gait "is moderately slow with a limp due to right low back pain." [Tr. 172]. Dr. Johnson also observed that an "abnormal sliding in the right genohumeral [shoulder] joint to palpation." [Tr. 171].

7

after he had reviewed x-rays, an MRI, and "many" other medical records brought to him by Plaintiff. [Tr. 169].  See 20 C.F.R. 404.1527(d)(6) (requiring the ALJ to assign weight in light of "the extent to which an acceptable medical source is familiar with the other information in your case record . . . ."). Dr. Johnson's opinion is therefore highly "supportable" within the meaning of 20 C.F.R. § 404.1527(d)(3).  Because Dr. Johnson's conclusions were in fact supported by objective findings, the ALJ's determination that Dr. Johnson's opinion was unsupported by objective findings and therefore entitled to no evidentiary weight whatsoever was itself not supported by substantial evidence.  [Tr. 17].

**2.    Dr. Robinson's Opinion Does Not Constitute Substantial Evidence Sufficient to Support the ALJ's Determination of Plaintiff's RFC.**

With regard to Dr. Robinson's opinion, Plaintiff argues that it is unexplained and unsupported by record evidence, and should therefore be rejected as substantial evidence sufficient to support the ALJ's determination regarding Plaintiff's RFC.  [Doc. 10].  Defendant argues that the ALJ "reasonably resolved the conflicts between the two consultative physician opinions, based on the lack of objective evidence, and Plaintiff's own admissions" and that "Plaintiff's invitation to re-weigh the evidence should be rejected."  [Doc. 12].

Dr. Robinson is a non-examining State agency consultant.  [Tr. 17].  An ALJ may not ignore the opinions of a non-examining state expert, but "must explain the weight given to these opinions in [his] decision[]."  SSR 96-6P.  In this case, the ALJ explicitly based his determination of Plaintiff's RFC on Dr. Robinson's opinion.  [Tr. 17].  The ALJ explained his reliance on that opinion as based on the fact  that Dr. Robinson had "reviewed much of the evidence of record" and that the RFC described by Dr. Robinson was "in keeping with the wide variety of daily activities the claimant reported she performs . . . ."  [Tr. 17].  The ALJ was mistaken on both counts.

8

Dr. Robinson's report does not describe the records to which Dr. Robinson referred in framing his ultimate opinion of Plaintiff's RFC. [Tr. 174-79]. In fact, the only reference made by Dr. Robinson to any other evidence of record is to Dr. Johnson's opinion. [Tr. 179]. Dr. Robinson did not testify at Plaintiff's hearing before the ALJ, [Tr. 194-214], and it is therefore impossible to conclude from the record that Dr. Robinson formed his opinion after he had "reviewed much of the evidence of record . . . ." [Tr. 17].

Moreover,

[T]he opinions of State agency medical . . . consultants . . . can be given weight only insofar as they are supported by evidence in the case record, [such as] the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical . . . consultant . . . ."

SSR 96-6P. However, Dr. Robinson's opinion is *not* consistent with the other evidence of record, as asserted by the ALJ and required by SSR 96-6P, and is in fact particularly inconsistent with Plaintiff's own testimony regarding her daily activities. Dr. Robinson reported, and the ALJ accepted, that Plaintiff has the RFC

[T]o lift/carry 50 pounds on an "occasional" basis and 25 pounds on a "frequent" basis. She may stand, walk, and/or sit a total of 6 hours during an 8 hour workday with routine breaks. She may "frequently" climb, balance, stoop, knee, crouch, and crawl. She is "unlimited" in her ability to perform push-pull motions with either her upper or lower extremities.

[Tr. 17, 175-76]. That assessment of Plaintiff's RFC is inconsistent with Dr. Johnson's opinion, the only other medical opinion in the record. [Tr. 172-73, 179]. More importantly, Dr. Robinson's assessment of Plaintiff's RFC is almost wholly contradicted by Plaintiff's own testimony and by the Third Party Function Reports ("TPR") submitted by Plaintiff in support of her application for

9

benefits.

Dr. Robinson opined Plaintiff has the RFC to "lift/carry 50 pounds on an 'occasional' basis and 25 pounds on a 'frequent' basis." [Tr. 17, 175]. That portion of Plaintiff's testimony most relevant to her ability to lift and carry regards her grocery shopping. Plaintiff testified that it can take her days to accomplish the grocery shopping unless her husband, Dennis Morgan ("Morgan") accompanies her to help carry the groceries. Specifically, Plaintiff testified that "The breads and the light box, bags and stuff like that I can carry in. The way they load the bags with cans and stuff, I can't . . . ." [Tr. 208]. Those items remain in the car until her husband can help with them. Id. Likewise, Plaintiff testified that she has difficulty carrying a gallon of milk or a five-pound bag of potatoes. [Tr. 208]. That testimony was corroborated by Morgan's TPR, submitted in support of Plaintiff's application for benefits, in which Morgan reported that while Plaintiff is capable of shopping for groceries, "I accompany her to carry items[.]" [Tr. 103]. Such testimony and record evidence directly contradicts Dr. Robinson's assessment of Plaintiff's RFC for lifting and carrying, and of all the evidence in the record is contradicted only by Dr. Robinson's assessment.

Dr. Robinson's conclusion that Plaintiff can "stand, walk, and/or sit a total of 6 hours during an 8 hour workday with routine breaks, [Tr. 17, 175], is contrary to Plaintiff's testimony. Plaintiff testified at her hearing that she can stand for only 15 or 20 minutes at a time, and that while she needs to keep her right leg moving, she can only walk half a block or so before needing to rest. [Tr. 205-06]. That limitation is reflected in Morgan's TPR, where he reported that Plaintiff can walk "about a block" before needing to stop and rest, and that the duration of the rest depends on the severeness of her pain. [Tr. 105]. Three-quarters of her day is therefore "spent sitting or laying, and reclined or laying." [Tr. 206]. But according to Plaintiff, sitting for extended periods of time is

10

equally problematic, as she testified that she cannot sit in front of the computer because of burning in her back and shoulders. [Tr. 211]. Likewise, Plaintiff testified that sitting through her hearing before the ALJ was "killing" her. [Tr. 212]. Plaintiff's testimony, and the TPRs submitted in support of her claim, therefore directly contradict Dr. Robinson's opinion.

Likewise, Dr. Robinson determined that Plaintiff "may 'frequently' climb, balance, stoop, kneel, and crawl." [Tr. 17, 176]. That assessment is also directly contradicted by Plaintiff's own testimony and other evidence in the record regarding her daily activities. At her hearing before the ALJ, Plaintiff testified that she has trouble with housework in part because "bending over and trying to get the bed made, takes me several attempts to get through with the whole thing." [Tr. 204]. Similarly, Morgan reported with regard to Plaintiff's ability to tend to her personal care needs that Plaintiff has to sit or lean on something while attempting to put on her pants, and as a result simply stays in her pajamas some days. [Tr. 101]. That testimony and evidence accords with Dr. Johnson's assessment of Plaintiff's limited flexion through her back and neck, and reflects her limited ability to lower herself in direct contradiction of Dr. Robinson's characterization of her RFC for bending, stooping, kneeling, and crawling as "unlimited."

Dr. Robinson further opined that Plaintiff has an unlimited RFC to "perform push-pull motions with either her upper or lower extremities." [Tr. 17, 175]. Plaintiff's ability to push and pull was specifically addressed at her hearing. With regard to vacuuming and sweeping, Plaintiff testified that:

> I can get it done, [but] it'll take me like two to three days to do the whole house because I can only do a little bit at a time and then I've got to quit because of the . . . forward and backward motion . . . causes a real burning sensation in my, the right side and down my leg.

11

[Tr. 204]. That testimony was corroborated in the TPRs submitted by both Morgan and Plaintiff's friend Gail Charbonneau ("Charbonneau"), who reported that while Plaintiff can complete routine housework she "has to rest and goes very slow," [Tr. 94], and needs help with most tasks, including vacuuming and mopping. [Tr. 94, 92]. Again, Plaintiff's testimony and the other evidence of record reflects only a very limited capacity to push and pull any amount of weight, in direct contradiction of Dr. Robinson's assessment.

Dr. Robinson's opinion regarding Plaintiff's RFC is therefore not, as the ALJ asserted, based on an extensive review of Plaintiff's medical records, nor is it consistent with the evidence regarding Plaintiff's daily activities. The only record referenced by Dr. Robinson's opinion is Dr. Johnson's report, the only other medical opinion in evidence. Dr. Robinson's opinion is contrary to Dr. Johnson's, and wholly inconsistent with Plaintiff's testimony and the TPRs submitted by both Morgan and Charbonneau regarding Plaintiff's daily activities, with regard to every limitation relevant to Plaintiff's RFC.

Finally, Dr. Robinson's explanations for his opinion are ambiguous at best. With regard to the expansive limitations that Dr. Robinson set on Plaintiff's exertional limitations, Dr. Robinson explained that:

> The claimant is a 52 year old woman who filed a title II and title XVI claim with AOD as of 9/1/2004 and DLI of 9/30/2004 due to back, neck, shoulder pain and severe headaches. In 1996 the claimant underwent L4-L5 diskectomy and foraminotomy. On 8/27/2005 the claimant had an ASE. Muscle strength was 5/5. Flexion of the LS spine was 51 degrees. Gait was antalgic. The claimant's weight was 130 pounds (68 inches). Headaches can be controlled medically. The claimant's condition is expected to improve to a severe impairment short of the listings.

[Tr. 175-76]. In explanation of his opinion as a whole, Dr. Robinson offered only that:

12

Dr. Johnson's MA appears overly restrictive compared to expected improvement 12 months after onset with treatment [and] [t]here is insufficient MER [medical evidence of record][4] for assessment of the DLI [date last insured][5] of 9/30/2004.

[Tr. 179]. These explanations accomplished little apart from supplying a thumbnail history of Plaintiff's medical problems and describing in briefest terms four of Dr. Johnson's observations. There is absolutely no explanation offered of how the information described supports Dr. Robinson's opinion. Moreover, Dr. Robinson's assertions that Plaintiff's headaches "can be controlled medically" and that Plaintiff's condition "is expected to improve to a severe impairment short of the listings" suggest that Dr. Robinson may have considered the impact of Plaintiff's impairments as of some future date rather than considering them, as he should have, as of the time that Plaintiff filed her claim. [See Tr. 176]. Dr. Robinson's later assertion that Dr. Johnson's opinion is "overly restrictive compared to expected improvement 12 months after onset with treatment" likewise raises the possibility that Dr. Robinson was considering the impact of Plaintiff's impairments under hypothetical or future circumstances, rather than on the basis of the evidence with which he was presented. [See Tr. 179]. In light of these ambiguities it is unclear from Dr. Robinson's bare report exactly what point in time he was assessing, and why he reached the conclusions he did with regard to Plaintiff's limitations.

SSR 96-6P provides that a non-examining expert's opinion constitutes substantial evidence only to the extent that it is consistent with the record as a whole. The ALJ asserted that Dr. Robinson's opinion, from which the ALJ adopted his assessment of Plaintiff's RFC, was based on

---

[4] Dr. Robinson used, but did not explain, the acronym "MER," which likely signifies "medical evidence of record."

[5] Dr. Robinson also used acronym "DLI," which means "date last insured."

13

a review of Plaintiff's medical records and consistent with Plaintiff's own testimony regarding her daily activities. [Tr. 17]. Were that the case, Dr. Robinson's opinion would be entitled to considerable evidentiary weight. However, the record reflects that Dr. Robinson's opinion is in fact inconsistent with the record as a whole, particularly Plaintiff's testimony, and does not support the conclusion that Dr. Robinson rendered his opinion after reviewing any evidence other than Dr. Johnson's report. Moreover, Dr. Robinson's opinion is plagued by ambiguities that render it of questionable value as an assessment of Plaintiff's then-current RFC. Under all those circumstances, Dr. Robinson's report is not entitled to any evidentiary weight and does not constitute substantial evidence sufficient to support the ALJ's determination regarding Plaintiff's RFC.

3. **The ALJ's Determination that Plaintiff's Testimony Was Not Credible Was Not Supported By Substantial Evidence.**

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms . . . . [but that] [t]he objective medical evidence simply fails to support the degree of the claimant's complaints of pain and other subjective complaints." [Tr. 19]. However, the record contains only two medical opinions regarding Plaintiff's limitations, of those two only Dr. Johnson's is entitled to any evidentiary weight, and Dr. Johnson's observations and conclusions corroborate Plaintiff's claims. Because Plaintiff's complaints are in fact supported by Dr. Johnson's objective observations and conclusions, the ALJ's determination that Plaintiff's complaints were unsupported by objective medical evidence is itself unsupported by substantial evidence.

The ALJ also emphasized that "[t]he variety of daily activities the claimant reported she performs when she initially filed her applications for disability benefits particularly tend to minimize the credibility of the degree of pain and other subjective complaints she professes she experiences."

14

[Tr. 19]. In particular, the ALJ noted that:

> [Plaintiff] indicated that she performs such routine housework as dusting, sweeping the floor, running the vacuum, washing dishes, and doing the laundry (Exhibits 6E and 5E). She also drives, runs errands, grocery and retail shops, and pays bills. She additionally plays Bingo, plays cards, sews and makes crafts, watches television several hours per day, listens to the radio and to music, reads, cooks simple meals, and tends to her personal self-care needs (Exhibits 5E and 6E).

[Tr. 19]. The ALJ appears to have misinterpreted the evidence in this case. Exhibits 5E and 6E consist of the TPRs submitted by Morgan and Charbonneau and are not the Plaintiff's admissions about her condition. [Tr. 92-107]. While the ALJ found that Plaintiff "performs such routine housework as dusting, sweeping the floor, running the vacuum, washing dishes, and doing the laundry," Charbonneau and Morgan's TPRs do not substantiate that finding. Rather, both Charbonneau and Morgan reported that Plaintiff does some work "but has to rest and goes very slow," [Tr. 94], and needs help with most tasks, including carrying and moving things, reaching things, vacuuming, and mopping. [Tr. 94, 102].

Charbonneau and Morgan's assessments are corroborated by Plaintiff's own testimony. At her hearing, Plaintiff's attorney questioned her regarding her ability to do housework as follows:

| Attorney: | Okay. Is there anything that you do, that you do around the house or that you've done in the past that you notice makes [your back pain] any worse? |
|---|---|
| Plaintiff: | Vacuuming and sweeping aggravate it a lot, bending over and trying to get the bed made, takes me several attempts to get through with the whole thing. |
| Attorney: | What about with vacuuming and sweeping, can you do that now? |
| Plaintiff: | I can get it done, it'll take me like two to three days to do the whole house because I can only do a little bit at a time and then I've got to quit because of the, the mot, the forward and backward motion – |

15

| Attorney: | Okay. |
|---|---|
| Plaintiff: | – causes a real burning sensation in my, the right side and down my leg. |

[Tr. 204]. Thereafter, the Plaintiff stated that she can do these activities for only fifteen minutes without taking a break. [Tr. 204]. There is no evidence in either Charbonneau or Morgan's TPR that Plaintiff washes dishes. Nor does the ALJ cite any other evidence in support of his conclusion that Plaintiff is capable of performing a full range of household chores.

Likewise, the ALJ misconstrued the evidence regarding Plaintiff's hobbies, interests, and leisure activities. The ALJ found, on the basis of Charbonneau and Morgan's TPRs, that Plaintiff "plays Bingo, plays cards, sews and makes crafts, watches television several hours per day, listens to the radio and to music, [and] reads . . . ." However, at her hearing, Plaintiff responded to the ALJ's question "Do you have any hobbies" with a simple "[n]ot really." [Tr. 198]. Moreover, while Charbonneau reported that Plaintiff's interests include "sewing, Bingo, [and] crafts" she further reported that Plaintiff "can't do these things because of back and neck[.]" [Tr. 96]. Morgan reports that Plaintiff can read, play cards, and watch TV or listen to music at least once a day "providing that she can change positions several times during any." [Tr. 104]. Therefore, the ALJ was simply mistaken in finding the evidence in the record indicates that the Plaintiff continues to engage in sewing, Bingo, and crafts. The ALJ further appears to have misunderstood the extent to which the evidence supports that she is capable of reading, watching television, or listening to the music.

As previously discussed, the ALJ misconstrued certain limitations on Plaintiff's ability to shop for groceries, cook, and tend to her personal self-care needs, each of which the ALJ found Plaintiff can accomplish without difficulty. Nonetheless, the ALJ cited these daily activities as a

16

primary reason for discounting the Plaintiff's credibility. [Tr. 19]. The ALJ cited the TPRs submitted by Charbonneau and Morgan in support of the assertion that Plaintiff is able to shop for groceries, and while both Charbonneau and Morgan reported that Plaintiff goes grocery shopping about twice each month, Morgan elaborated that "I accompany her to carry items[.]" [Tr. 103]. That qualification is corroborated by Plaintiff's own testimony on her ability to shop for groceries.

> Attorney: [D]o you have any problems as far as lifting, carrying in groceries, doing those types of activities?
>
> Plaintiff: I, when I go grocery shopping, I usually split it up to a week where it will take me like three days to do it, especially if my husband can't help carry anything in. It sits in the car until he can. The breads and the light box, bags and stuff like that I can carry in. The way they load the bags with cans and stuff, I can't, it pulls too much on, anything that I lift with this side just pulls really bad on that.

[Tr. 207-08]. The evidence in the record regarding Plaintiff's ability to shop for groceries therefore substantiates Plaintiff's claims, rather than tending to negate them. Likewise, the ALJ found that Plaintiff's claims are undermined by the fact that according to the TPRs submitted by Charbonneau and Morgan, Plaintiff is capable of tending to her own personal self-care needs. [Tr. 19]. However, with regard to Plaintiff's ability to tend to her personal care, Charbonneau reported "I don't know," [Tr. 93], while Morgan reported that Plaintiff has trouble even dressing herself, and simply stays in her pajamas some days. [Tr. 101]. The evidence in the record therefore contradicts, rather than supports, the ALJ's characterization of Plaintiff's ability to care for herself as unimpaired.

The ALJ's characterization of Plaintiff's daily activities, while not entirely incorrect, contains factual errors. It is therefore impossible to conclude that, had he rightly perceived the evidence, the ALJ would have found that it minimized the credibility of Plaintiff's alleged pain and other subjective complaints. Moreover, because the ALJ failed to recognize that both the evidence

17

regarding Plaintiff's daily activities and the objective medical evidence in the record actually corroborate, rather than contradict, plaintiff's assertions regarding the degree of her pain, the ALJ's decision to discredit Plaintiff's testimony was not supported by substantial evidence.

Finally, in making his credibility determination the ALJ noted in this opinion that the Plaintiff purchases Hydrocodone, "off the streets whenever she can get it for pain." [Tr. 19]. The ALJ did not include a citation to indicate where this statement came from, and the only citation the Commissioner offers to support this statement is to page eighty-eight of the record, a page upon which the Plaintiff states that she uses Hydrocodone "when available." [Doc. 12 at 2, Tr. 88]. The Court has been cited to no portion of the record where the Plaintiff admits to illegally obtaining controlled-substances of the street.

In sum, the ALJ rested his determination of Plaintiff's RFC on a medical opinion that is entitled to diminished evidentiary weight and that opinion was, moreover, contrary to the record as a whole. The sole remaining medical opinion supports only much more restrictive limitations on Plaintiff's RFC than the ALJ initially set, but that opinion is corroborated by Plaintiff's own testimony and the TPRs submitted in support of Plaintiff's application. Because the ALJ's determination of RFC is based on an opinion which does not constitute substantial evidence, and is unsupported by the other evidence of record, the determination is ultimately not supported by substantial evidence.

**B.      *Plaintiff's Ability to Return to Past Relevant Work.***

Plaintiff also alleges that the ALJ erred in failing to make specific findings as to the demands of Plaintiff's past relevant work as a hostess/restaurant manager, and in failing to evaluate in his opinion the impact of Plaintiff's RFC on her ability to return to that work. [Doc. 10]. Although it

18

is, at step four, Plaintiff's burden to establish that she is incapable of performing her past relevant work, "the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy." D'Angelo v. Comm'r of Soc. Sec., 475 F.Supp. 2d 716, 723-24 (W.D. Mich. 2007) (citing Studaway v. Sec'y. of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987)); see also 20 C.F.R. § 404.1520(f) ("[W]e will compare your residual functional capacity . . . with the physical and mental demands of your past relevant work.").

In order to offer such an explanation, the ALJ must necessarily undertake to determine, to the extent possible, the actual demands of a claimant's past relevant work. 20 C.F.R. § 404.1560(b)(2) ("We will ask you for information about work you have done in the past" and may also consult vocational experts, the Dictionary of Occupational Titles, and other sources to determine "the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."). It is the ALJ's responsibility to ensure that the record is sufficiently developed to support a reasoned determination as to the demands of Plaintiff's past relevant work and Plaintiff's ability to meet those demands. See Id.; see also SSR 82-62.

Social Security Ruling 82-62 supplies the ALJ with detailed guidance regarding the evaluation and explanation of the demands of a claimant's past relevant work and a claimant's ability to meet those demands.[6] Under SSR 82-62, "Past work experience must be considered carefully to

---

[6]"SSR's 'are binding on all components of the Social Security Administration' and 'represent precedent final opinions [sic] and orders and statements of policy and interpretations' adopted by the agency[.]" Holliman v. Comm'r of Soc. Sec., No 1:07-CV-560, 2008 WL 4181136 at *5 (W.D. Mich. Sept. 3, 2008) (quoting C.F.R. § 402.35(b)(1)).

19

assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." Id. In gathering information, the "claimant is the primary source for vocational documentation" regarding the demands of past relevant work, and because the determination at step four is so critical, the ALJ's determination regarding a claimant's ability to meet those demands given the claimant's RFC "must be developed and explained fully in the disability determination." Id. In fact, "every effort must be made to secure evidence that resolves the issue as clearly and explicitly" as possible, and "[d]etailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate." Id.

In this case, the ALJ determined that Plaintiff's past relevant work was as a restaurant hostess/manager, [Tr. 20], but fell short of the requirements of 20 C.F.R. § 404.1560(b)(2) and SSR 82-62 to investigate and evaluate the demands of that work. At Plaintiff's hearing, the ALJ inquired as to the demands of Plaintiff's past relevant work twice. The ALJ first questioned Plaintiff as to why she was laid off from her job as floor manager at a restaurant, to which position she had "moved up" from hostess. [Tr. 199]. Plaintiff explained that she was laid off:

> [P]artly because I couldn't continue with the hours that it needed. We did a lot of banquets which required moving a lot of furniture and chairs and stuff around and I was having to go to a chiropractor there and I had missed some days and they just, they hired somebody, a guy, in to replace it because of all the moving, I just couldn't do it all.

[Tr. 199-200]. The ALJ gave this statement about being laid off significant weight in his analysis. However, the Court finds that this statement was taken out of context. In fact, the Plaintiff's entire statement about other workers getting laid off was that, "They laid everybody off, they, that's, I don't know if it was just the owner but nobody there ever got fired, they were just laid off." [Tr. 200].

20

Considering the Plaintiff's statement that she was "laid off" because she was unable to perform the necessary tasks along with her statement that the owners never "fired" anyone but instead coined any termination a "lay-off," it appears to the Court that the Plaintiff was in fact let go because her health restricted her ability to perform the necessary work. While the Plaintiff may label this a lay-off there is no indication of downsizing or work-force reduction, instead the evidence of record and the Plaintiff's explanation indicates that her health made her incapable of completing the necessary exertion entailed in the position.[7]

The ALJ did not probe further for details regarding the weight of the furniture plaintiff was expected to move, the frequency with which she was expected to move it, or other facts that would have been relevant to whether, given her RFC, she could return to that work. Later, the ALJ asked Plaintiff what had been her easiest job in the past, suggesting that it was her job as a hostess.

Plaintiff:    That, yeah, that was probably the easiest other than the standing that it required for –

ALJ:    Okay. Okay.

[Tr. 201]. After interrupting Plaintiff's explanation, the ALJ turned the conversation immediately toward Plaintiff's granddaughter. [Tr. 201]. At no other point in the hearing did the ALJ inquire into the demands of Plaintiff's past relevant work. Likewise, no vocational expert testified at Plaintiff's hearing with regard to the demands typically placed on hostesses or restaurant managers in the national economy, and the ALJ's opinion reflects that he failed to consult the Dictionary of

_____

[7]The ALJ correctly noted that the Plaintiff received five to six months of unemployment benefits after being let go from this position and that receiving such benefits is contrary to receiving disability benefits. The Court does not have an exact time line detailed the length of any unemployment benefits and the extent to which such payments would overlap with the alleged period of disability. However, to the extent the Plaintiff was receiving such benefits it would conflict with an award of disability benefits for the same period.

Occupational Titles for that information. [Tr. 14-20]. The record therefore reflects that the ALJ failed to make any significant effort to develop a record regarding the actual demands of Plaintiff's past relevant work, as either performed by Plaintiff or expected in the national economy, to support a determination at the fourth step of the analysis.

Moreover, the ALJ never undertook to explain why, given Plaintiff's RFC, she should be able to meet the demands of her past relevant work, offering only the conclusion that, "in comparing the claimant's residual functional capacity with the physical and mental demands of [Plaintiff's past relevant work], the undersigned finds that the claimant is able to perform it [as it] is generally performed in the national economy." [Tr. 20]. Although the record does contain a single piece of evidence, a Work History Report dated May 26, 2005, that sheds some light on the demands of Plaintiff's past relevant work, [Tr. 80-87], the ALJ never cited that or any other evidence from the record in support of his conclusion. The ALJ "must explain *why* the claimant can perform the demands and duties of the past job[,]" D'Angelo, 475 F.Supp. at 724 (emphasis supplied), and although "[t]he ALJ need not discuss every aspect of the record or explain every finding at length [he] must 'articulate with specificity reasons for [his] findings and conclusions [ . . .]' to facilitate meaningful judicial review." Wright v. Astrue, No. 1:07-CV-226, 2009 WL 890051 at *1 (E.D. Tenn. Mar. 26, 2009) (quoting Bailey v. Comm'r of Soc. Sec., No. 98-3061, 1999 WL 96920 at *4 (6th Cir. Feb. 2, 1999)). In this case, the ALJ's conclusory explanation of Plaintiff's ability to return to her past relevant work was inadequate.

Because the ALJ failed to adequately investigate the demands of Plaintiff's past relevant work, and in any case failed to explain how, given her RFC, Plaintiff could meet those demands, the ALJ's determination that Plaintiff remains capable of performing her past relevant work is not

supported by substantial evidence. Accordingly, the decision of the Commissioner should be reversed and this matter should be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this report and recommendation.

## V.     CONCLUSION

The Court finds that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence. Likewise, the Court finds that the ALJ's determination at step four of the sequential analysis is not supported by substantial evidence. Therefore, it is hereby **RECOMMENDED**[8] that Plaintiff's Motion For Summary Judgment **[Doc. 9]** be **GRANTED to the extent it requests that this matter be remanded for further consideration by the Commissioner** and that the Commissioner's Motion for Summary Judgment **[Doc. 11]** be **DENIED**.

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[8] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).

23